# THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *vs.* DUKE BOND.

*Charter of Baltimore City—Provisions Relating to Loans for Water Supply.*

The provisions in sec. 6, sub-section Water, of the Charter of Baltimore City (Act of 1898, ch. 123), relating to the issue of certificates of indebtedness to the extent of five million dollars for improving the municipal water supply were intended to preserve in force the then existing statutes on that subject, and do not authorize the creation by the city of a new and distinct indebtedness of five million dollars to improve the water supply.

*Decided December 20th, 1906.*

Appeal from the Circuit Court of Baltimore City (DOBLER, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edgar Allan Poe* (with whom was *W. Cabell Bruce* on the brief), for the appellants.

The Court declined to hear *William S. Bryan, Jr.*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in the record before us is from an order of the Circuit Court of Baltimore City granting an injunction restraining the Mayor and City Council of Baltimore from submitting to the voters of that city, for approval or disapproval, an ordinance authorizing the issue and sale of $5,000,000 of city stock for the purpose of improving the municipal water supply. The appellant, as defendant below, had demurred to the bill of complaint in the case and its demurrer was overruled by the order granting the injunction.

The bill was filed by the appellee, as plaintiff below, on behalf of himself and all other taxpayers of Baltimore City. It alleges that the City Council had passed and the Mayor had approved on May 23rd, 1906, an ordinance known as No. 132, of which a copy was filed with the bill as an exhibit, purporting to provide for the issuance of five million dollars of city stock in order to defray the cost of augmenting and improving the water supply of the city. That, although the ordinance had been passed with due formality, it was void because, under sec. 7 of Art. xi of the State Constitution before any debt can be created by the city or its credit pledged to the payment of any loan negotiated for works of public improvement, authority therefor must be granted by an Act of the General Assembly of Maryland and no such enabling Act had been passed in reference to the proposed issue of city stock. That it is claimed that a legislative authority for the issue of the proposed loan is to be found in sec. 6, sub-title "Water" of the New Charter of the city of Baltimore adopted by chap. 123 of the Acts of 1898, but that Act was not intended to and did not grant any authority to the city to issue the proposed loan.

The bill then reviews in detail the numerous Acts of the General Assembly and ordinances of the Mayor and City Council of Baltimore passed in pursuance thereof touching the creation of loans for the purpose of furnishing an adequate municipal water supply. It is sufficient for the purposes of this opinion to say that it appears from the allegations of the bill in that respect that prior to the year 1876 there had been created, by the full exercise and exhaustion of the legislative authority up to that time granted, loans for which city stock known as "Water Stock" was then outstanding to the aggregate extent of $5,000,000, bearing six per cent interest and redeemable at the pleasure of the city after May 1st, 1875. The Legislature then by ch. 237 of the Acts of 1876 authorized the Mayor and City Council to issue stock to the amount of not exceeding $5,000,000 at a rate of interest not to exceed five per cent for the purpose of redeeming and refunding at a

lower rate of interest the then outstanding water loans. It
was also alleged that at the time of the filing of the bill all of
the stock authorized by the Act of 1876, ch. 237, had been
issued and with the proceeds thereof the pre-existing $5,000,000
loan had been redeemed and retired.

The bill further alleges that unless restrained by the Court
the Mayor and City Council will proceed to treat sec. 6, sub-
title "Water," of the Baltimore City Charter as conferring
authority upon the municipality to create a new and additional
loan of $5,000,000 and will take the requisite steps to have
Ordinance No. 132 submitted to the people for approval or
disapproval at the municipal election to be held on May 7th,
1907, and prays for an injunction to restrain them from so
doing.

The single question presented for our determination by the
record is whether the provisions of the City Charter contained
in section 6, sub-section "Water" relative to the issue by the
city of certificates of debt to be denominated Baltimore water
stock were intended by the Legislature to preserve in force
and operative the existing provisions of law upon that subject,
or to authorize the creation of a new and distinct indebtedness
of $5,000,000, by the city. It will aid us to arrive at the true
purpose of the Legislature in enacting the City Charter, ch.
123 of the Acts of 1898, to consider the circumstances leading
up to its passage and the contents of the Act itself. It is a
matter of common knowledge that, in recognition of a fre-
quently expressed desire on the part of its citizens to secure
for Baltimore City the advantages to be derived from the
adoption of those methods and measures which had proven
beneficial in the government of other cities, the Mayor and
City Council in 1897 created a commission to prepare for sub-
mission to the Legislature an organic law or charter codifying
the existing laws and ordinances relating to the city and en-
grafting thereon the desired new measures. The commission
thus appointed prepared with diligence and care the present
charter, which after having received the unanimous approval
of both branches of the City Council was enacted by the Leg-
islature as ch. 123 of the Acts of 1898.

An inspection of the contents of that Act makes it plain that the commission charged with the duty of the preparation of the charter adhered closely to the wise plan of retaining in force as far as possible existing laws and ordinances and making only such amendments thereto as were necessary to accomplish the purpose for which they were appointed. The title to the Act makes it apparent that the Legislature were animated by the same purpose in its passage.

The title to the Act is "*An Act to repeal Art. 4 entitled "City of Baltimore" of the Code of Public Local Laws of Maryland and the several Acts and parts of Acts amendatory thereof, and to re-enact the said Art. 4 with amendments under two sub-titles to be known as Charter and Miscellaneous Local Laws.*" The enacting clause strictly follows the title. In the body of the Act such of the existing laws as would appropriately form portions of an organic system of municipal government are codified and arranged with the desired changes and amendments under suitable heads into the portion of the Act known as the charter, and the others are codified in orderly arrangement into the portion of the Act known as "Miscellaneous Local Laws."

It is thus obvious that the purpose of the passage of the Act was to construct out of existing local legislation relating to the city, with such amendments as were necessary for that purpose, an improved *system* of municipal goverment, and not to authorize specific transactions such as the creation of a great loan of $5,000,000, to be applied to a single department of municipal activity.

Section 6 of the charter relates to the general powers of the city. As those powers have their origin in legislative grant the section appropriately consists in the main of a collection and arrangement under suitable sub-titles of the substance of the then existing laws which conferred upon the city government the powers which it already possessed. The portion of the section under the sub-title of "Water" authorizing the city to "establish, operate, maintain and control" a system of water supply and to pass all ordinances requisite for that pur-

pose and from time to time to acquire by contract, purchase or condemnation all waters, water courses, lands and rights of way which it may deem necessary; and for the purpose of defraying the cost and expense thereof and the construction of the works necessary for the water supply to issue certificates of debt to be denominated on their face "Baltimore Water Stock" to an amount not exceeding $5,000,000, bearing interest not exceeding 6 per cent *per annum*, and to provide for its redemption and to assess rates for the use of the water and collect the same by the same process that city or State taxes are collected.

It is a well known fact that the public water supply of Baltimore City had been established and in operation for many years prior to the passage in 1898 of the City Charter. It appears from the record that anterior to 1876 water stock bearing six per cent interest had been issued at various times by the city under appropriate legislation to the aggregate of $5,000,000. By chapter 237 of the Acts of 1876 the city was authorized to issue $5,000,000 of stock paying not exceeding five per cent interest, for the purpose of redeeming the outstanding six per cent water stock and "to make provision for the redemption of the said stock and for the payment of the interest thereon at such times and in such manner as to it shall seem best." So that at the time the charter was framed and passed there were outstanding $5,000,000 of city stock issued for purposes of the water supply bearing, presumably not exceeding 5 per cent, and certainly not exceeding 6 per cent interest, of which the city must thereafter currently pay the interest and ultimately pay the principal. The legislation authorizing the establishment and maintenance of the water supply, the acquisition of the property from time to time requisite for that purpose, the issue of loans to raise the necessary funds, the levy of taxes and water rates to pay the principal and interest of the loans all stood unrepealed and was very properly preserved in its essential features and codified into the city charter. The fact that some of these powers had been in part executed would not have led to the repeal of the

laws by which they were conferred upon the city if the charter had not been adopted, and there was nothing in the scheme of granting the charter which called for the repeal of those laws, and therefore their retention in that instrument does not indicate any other legislative purpose than to continue them in force in so far as they may be still applicable and operative.

It may be observed that in section six of the charter will also be found codified the legislation authorizing the issue of $2,500,000 of bonds for the improvement of Jones Falls and of $1,000,000 of bonds for the construction and completion of Lake Clifton, but it has never been suggested that these provisions in the charter authorized the issue of new city stock to the amount of those loans.

We are unable to find in the contents of section 6 of the charter any support for the contention of the appellant that the Legislature intended thereby to authorize the City of Baltimore to issue $5,000,000 of stock in addition to that now oustanding for the purposes of the public water supply or for any municipal purpose.

The order appealed from will be affirmed.

*Order affirmed with costs.*