## J. FRANK RUSHE *vs.* HYATTSVILLE.

*Municipal corporations; granted powers only; borrowing money; acts ultra vires; injunction by taxpayers.  Hyattsville.*

Taxpayers have the right to restrain *ultra vires* acts of the municipality.                                        p. 125

Municipal corporations have only such powers as are granted to them by the Constitution or statute either expressly or by fair and reasonable construction.   Any fair and reasonable doubt as to the existence of a power attempted to be exercised must be resolved against the corporation.      p. 126

The power to borrow money is not a necessary incident to municipal life, and does not exist unless expressly given, or unless some duties are imposed or powers conferred on the corporation which manifestly could not be exercised at all without borrowing money.                          p. 127

Power to borrow money and to issue notes or obligations of a municipal corporation to be paid out of future levies, can not be implied from the *mere* authority to purchase property and erect public buildings.                          p. 129

The Charter of Hyattsville (Act 1908, Ch. 79) only authorizes
the borrowing of money as provided in section 17—that is,
in the case of any emergency arising after the tax levy which
could not have been reasonably anticipated and demanding
the immediate raising of money in excess of the town's reve-
nue and for the special purposes mentioned in section 25.

                                                        p. 130

*Decided June 25th, 1911.*

Appeal from the Circuit Court for Prince George's Co.
(BEALL, J.).

The cause was argued before BOYD, C. J.; BRISCOE,
PEARCE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Chas. Benedict Calvert* and *James C. Rodgers*, for the
appellants.

*Vincent A. Sheehy*, for the appellees.

BURKE, J., delivered the opinion of the Court.

This suit was instituted to test the validity of two ordi-
nances of the Mayor and Common Council of Hyattsville, a
municipal corporation.    One ordinance authorized, empow-
ered and directed the corporation to contract with Hillary T.
Willis for the purchase of a lot of land on the terms and con-
ditions set forth in the ordinance, "and in the name and
under the seal of the Mayor and Common Council of Hyatts-
ville to make, execute and deliver such *promissory notes,
bonds and other evidences of indebtedness, mortgages or deeds
of trust* as may be requisite and necessary to secure the pay-
ment of the purchase money aforesaid, etc."

The ordinance authorized the purchase of the lot for $1,000
payable in five years with interest at 6 per cent. per annum,
payable half yearly, the purchase price to be represented by
the *promissory note, bond or other evidence of indebtedness
of the corporation,* and secured by a second mortgage or deed
of trust on the lot.

The other ordinance authorized the municipal corporation to borrow the sum of three thousand dollars from the Hyattsville Building Association to be applied to the erection and construction of a suitable building upon the lot to be used as a town hall and quarters for the fire department and other municipal purposes. The ordinance provided that the amount borrowed should "be represented by the *bond, note or other evidence of indebtedness* of the Mayor and Common Council of Hyattsville as may be required by the constitution and by-laws of said association, and the re-payment thereof secured by a first deed of trust or mortgage" on the lot described in the ordinance.

The appellants are residents and taxpayers of the town of Hyattsville, and filed the bill in this case in which they prayed:

1. That the said, the Mayor and Common Council of Hyattsville, its agents, servants and employees, and the said William P. Magruder, as mayor, and George Hodges Carr, as clerk thereof, they and each of them, may be enjoined from purchasing said lot from the said Hillary T. Willis or from anyone else, upon the terms stated, or contract for the purchase of the lot aforesaid, or issue any note or give said mortgage, or from doing anything else as provided by said ordinance as aforesaid.

2. That the said, the Mayor and Common Council of Hyattsville, its agents, servants and employees, and William P. Magruder, as mayor, and George Hodges Carr, as clerk thereof, they and each of them may be enjoined from negotiating said loan and from contracting or issuing any bond, note or other evidence of indebtedness, or executing said mortgage to the Hyattsville Building Association, or to anyone else for the said sum of three thousand dollars, or for any other sum upon the terms and conditions mentioned or of doing anything else as provided by said ordinance as aforesaid.

The ground upon which this relief is asked is stated in the thirteenth paragraph of the bill as follows: "That the

aforesaid ordinances provide for acts and contracts that are illegal, and the ordinances themselves are beyond the power and authority of the said the Mayor and Common Council of Hyattsville, and the said Mayor and clerk thereof, and are illegal and void, and the said the Mayor and Common Council of Hyattsville having by ordinance aforesaid provided that said illegal acts are to be done, and instructed the said William P. Magruder, as mayor, and George Hodges Carr, as clerk of said town, to negotiate said loans, execute said note, contract for said indebtedness, and execute said mortgages aforesaid, and their execution or enforcement will work great damage and injury to the plaintiff and the other taxpayers of the said town of Hyattsville." An answer was filed by the corporation and the case was heard in the lower Court upon bill and answer. The Court denied the injunction, and from this order the plaintiffs have appealed. It is quite evident, we think, that the purpose of the corporation in the passage of the two ordinances was to borrow money with which to pay for the lot and the erection of the building referred to therein. It is important to bear in mind the precise question we are dealing with. It is not as to whether the Mayor and Common Council of Hyattsville has power to purchase this lot and to erect the building provided for in the ordinance; but whether it has the power to borrow the money for those purposes by the issue of the obligations of the character mentioned in the ordinances to be repaid out of future levy upon the property of the residents of the corporation.

Confessedly, it has no such power unless it be granted by its charter. The ultimate inquiry is whether by a true construction of the charter of the appellee corporation it has the power to do the things which are complained of in this case. If the ordinances are *ultra vires,* the right of the complainants as taxpayers to maintain the bill is beyond question. This has been settled by numerous decisions in this State. *Mayor and City Council* v. *Gill,* 31 Md. 375;

*Packard* v. *Hayes,* 94 Md. 252; *Christmas* v. *Warfield,* 105 Md. 530; and other cases.

In the case of the *Mayor and City Council* v. *Gill, supra,* this Court said: "In this State the Courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations; and have not hesitated to exercise their rightful jurisdiction for the purpose of restraining them within the limits of their lawful authority, and of protecting the citizens from the consequences of their unauthorized, or illegal, acts."

It is settled by all of the authorities that municipal corporations have only such powers as are granted to them by the constitution or statutes, either expressly, or by fair and reasonable construction.

The following statement from 1 *Dillon on Munic. Corp.,* 4th Ed., sec. 89, is supported by practically an unbroken line of decisions: "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers and no others*:

First. Those granted in express words; second, those *necessarily or fairly implied* in or incident to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation—*not simply convenient, but indispensable.*" See also cases of *St. Mary's Industrial School* v. *Brown,* 45 Md. 331; *Baltimore City* v. *Bond,* 104 Md. 590; *Revell* v. *Annapolis,* 81 Md. 9; *Minturn* v. *Larue,* 23 How. 436.

It is equally well settled that any fair and reasonable doubt as to the existence of the power attempted to be exercised must be resolved against the corporation, and in such case the power must be denied.

In 1 *Dillon on Munic. Corp.,* sec. 117, the author says: "It is perhaps settled law in this country that private corporations, organized for pecuniary profit, have, in the absence of special limitation or restriction, an implied or incidental authority to borrow money for their legitimate purposes, and

to give negotiable obligations for its re-payment. The question of the *incidental authority of municipal corporations to borrow money* has not been so thoroughly considered and so often decided as to be entirely closed to controversy. In view of the legislative practice to confer, in terms, all powers so important as this, the dangerous nature of this power, by reason of the temptations it holds out to incur needless debts and to make extravagant expenditures, and the facilities it offers for fraud, and the settled and salutary doctrine that such corporations have no powers but such as are expressly conferred, and those which are necessary to effect the ojects of the corporation, and those which are incidental to the express grants, the author, where the legislative will is wholly silent, is strongly inclined to deny the existence of a general implied or incidental power to borrow money. But it must be admitted that down to the present time a majority of the expressed adjudications on the subject favor the contrary opinion."

It is stated in 6 *Am. & Eng. Anno. Cases,* 760, that "on the question whether a municipal corporation has or has not, in the absence of an express grant, power to borrow money to make public improvements, the decisions are in direct conflict. Probably, in the majority of jurisdictions it is held, in conformity with the rule announced in the leading case of *Nashville* v. *Ray,* 19 Wall. (U. S.) 475, that the power to borrow money does not belong to a municipal corporation as an incident of its creation, but that it exists only when conferred by expressed legislative grant, or by force of legislative investment of power coupled with the imposition of duties which are incapable of exercise and performance with the borrowing of money."

In *Luther et al.* v. *Wheeler et al.,* 73 S. Car. 83, the Court said: "The power to borrow money is not a necessary incident of municipal life, and hence does not exist unless expressly given, or unless some duties are imposed or powers conferred on the corporation which manifestly could not be exercised at all without borrowing money. The two leading

cases on the subject are *Nashville* v. *Ray*, 19 Wall. (U. S.) 468, and *Hackettstown* v. *Swackhammer*, 37 N. J. L. 191. Authorities to the same effect will be found collected in 8 *Rose's Notes*, 453; *Note to Jones V. Camden*, 44 S. Car. 319, 23 S. E. Rep. 141, 51 Am. St. Rep. 828; *Wells* v. *Salina*, 119 N. Y. 289, 23 N. E. Rep. 870, 7 L. R. A. 759; *Allen* v. *Lafayette*, 89 Ala. 641, 8 So. Rep. 30, 9 L. R. A. 497; 1 *Dillon on Munic. Corp.*, sec. 125, 1 and sec. 507a; 20 *Am & Eng. Ency. of Law*, 2nd Ed., 1143. A contrary view was taken in a number of the earlier cases cited in 1 *Dillon on Munic. Corp.*, sec. 118, and by some of the justices of the Supreme Court of the United States in *Nashville* v. *Ray*, *supra*. There is now, however, little if any judicial dissent from the view that municipal corporations are not the general fiscal agents of the corporation with the implied power to borrow money for corporate purposes. This conviction of the Courts has been greatly strengthened by the disasters which have befallen so many communities growing out of the negligent and fraudulent misappropriation of money borrowed by counties, cities and towns."

These principles are in acord with the views expressed by JUDGE DILLON, and we think they are the principles which should control this case. They are less liable to lead to the needless creation of debts and extravagant expenditure than those contended for by the appellee, although the positioin taken by the appellee has the support of Courts of high authority. It is conceded that there is no *express* authority conferred upon the corporation to borrow money for the purposes stated in the ordinances. Nor is there any *duty* imposed upon it to purchase the lot, or to erect the proposed building.

By sections 2 and 28 of the charter of the town of Hyattsville (Acts 1908, Ch. 79), the municipality is authorized "to purchase and hold real, personal and mixed property, and sell and dispose of the same for the benefit of the town," and "to purchase and hold said property, real, personal and

mixed for town purposes, and dispose of the same for the benefit of said town, and may erect suitable buildings."

It was upon these provisions of the charter that the Court below *implied* the power in the defendant corporation to pass the ordinances in this case. We cannot concur in this view. The power to borrow and to issue the notes or obligations of the corporation to be paid out of future levies cannot be implied from the *mere* authority to purchase property and erect public buildings. In 1 *Dillon on Munic. Corp.*, section 125, it is said: "The power to borrow money as a means of raising a fund to make future local improvements, or to carry on the ordinary operations of the municipality, cannot be implied from the mere authority to make such improvements or from the usual grant of municipal power. These contemplate that the expense of the execution of the ordinary municipal powers shall be met by the revenue derived year by year from taxation."

Moreover, we think, it reasonably clear from *sections 17 and 25 of the charter* that the legislature did not intend that the appellee should have the power to borrow money, except for the specific purposes mentioned in *section 25.* That section provides that "the Mayor and Common Council shall not expend or contract to expend in any one fiscal year more money than the amount receivable from taxes and other sources during that year except as provided in *section 17*, which section expressly limits the tax rate for all purposes, but contains the provision that "in the event of any emergency arising which could not have been reasonably anticipated at the time of making the annual levy by the Mayor and Common Council and demanding the immediate raising of money in excess of the town's revenue, the Mayor and Common Council shall have power by ordinance to provide for an additional tax levy, but such ordinance, however, must be submitted to the voters of the town and be approved by a majority vote before such additional levy can be made. Section 25 further provides, "that the present Mayor and Common Council may authorize the obligations of the town

to be issued to an amount not exceeding two thousand dollars, and payable and renewable at such times as may be agreed upon by said Mayor and Common Council or the Council, provided for by that act, to the extent of not exceeding two thousand dollars, to cover *existing deficiencies in the town revenue,* and may also purchase on instalments to be agreed upon between the Mayor and Common Council and the vendors, meters necessary to regulate the flow of water to each consumer, the indebtedness therefore not to exceed three thousand dollars."

These provisions of the charter manifest a clear intention to restrict the taxing power of the appellee, and to deny it the power to borrow money except in the two instances mentioned.

The order appealed from will be reversed, and the case remanded in order that the injunction prayed for may be granted.

> *Ordered reversed, with costs to the appellants above and below, and cause remanded.*