# COUNTY COMMISSIONERS OF HOWARD COUNTY *vs.* CHARLES T. MATTHEWS.

*Counties—Powers—Construction of Road—Change in Contract.*

Counties, like municipal corporations, can only exercise such powers as are expressly granted by the State, together with such implied powers as are necessary for the execution of the powers expressly granted.                    · p. 561

Officers of a county are public agents of limited powers, and cannot bind the public by their acts in excess of the delegated power, nor can an expressly delegated power be exercised in a manner contrary to the mandatory language of the enabling statute.                    p. 561

The express power given by Acts 1910, ch. 217, to the county commissioners to make contracts for the construction or improvement of a "state-aided" road, carried with it the necessarily implied power to complete the construction or improvement in case of default by the original contractor.                    p. 563

In making a contract for the completion of a road, on the default of the original contractor, it was unnecessary for the county commissioners to re-advertise or to award the contract to the lowest responsible bidder, as in the case of an original contract, nor to require a new bond of the contractor who was to complete the road, after assent to the new contract had been given by the surety on the original contractor's bond.

pp. 562-564

A provision, in a contract for a "state-aided" road improvement, that the contractor should do such additional work as might be necessary, in the opinion of the engineer of the State Roads Commission, "to complete the improvement herein planned and contemplated," did not authorize the engineer to require asphalt surfacing, which necessitated cobble shoulders, when the contract called for amiesite surfacing, which necessitated only dirt shoulders.                          pp. 564-566

The original contract providing that the county commissioners might make changes in the plans and specifications, provided they were recommended by the engineer, and that if such changes involved increased cost to the contractor, a fair and equitable sum therefor, to be agreed upon in writing before such changed work shall have begun, should be added to the contract price, *held,* in an action by the contractor to recover for extra work, that whether the county commissioners deemed the change necessary and desirable, whether the engineer approved thereof, and whether a fair and equitable sum was agreed upon in writing, were questions for the jury.                          p. 566

The contract requirement that the fair and equitable sum to be added to the contract price should be agreed upon in writing did not require the signatures of the contracting parties, and was satisfied by an "extra work order" issued by the engineer, definitely and particularly setting forth the amount of the extra compensation.                          p. 567

*Decided December 22nd, 1924.*

Appeal from the Circuit Court for Baltimore County (Duncan, J.).

Action by Charles T. Matthews against the County Commissioners of Howard County. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before Boyd, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Bond, JJ.

*James Clark,* with whom were *Edward M. Hammond* and *Joseph L. Donovan* on the brief, for the appellant.

*Edgar Allan Poe,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

Diggus, J., delivered the opinion of the Court.

Under the provisions contained in chapter 217 of the Acts of 1910, commonly referred to as the Shoemaker Road Law, the County Commissioners of Howard County, the appellants, on December 1st, 1916, entered into a written contract with the Amiesite and Stone Company for the construction or improvement of a road located in Howard County, known as Mike's Quarter Road, between Lowndes' Entrance and Mike's Quarter, a distance of about three and seventy-four hundredths miles, with a substance known as amiesite.

The original contract was No. 453, and the work was known as a state aided road improvement, authorized by chapter 217 of the Acts of 1910, under which one-half of the cost of the improvement was to be paid by Howard County and the other one-half by the State Roads Commission.

The contract was a *unit* contract and the original estimated cost of the entire work was about $61,300. This contract called for dirt shoulders to support the amiesite surfacing. The original contractor was required to give bond for the faithful performance of the contract, which was done, and the United States Fidelity and Guaranty Company became the surety on that bond.

The Amiesite and Stone Company defaulted, and on April 17th, 1918, a new contract in writing was entered into between the appellant and the appellee, Charles T. Matthews, he being an employee of the surety on the bond of the original contractor. Under the terms of the new or substituted contract the work was to be performed according to the same plans and specifications, and for the same unit price as set out in the original contract, and the County Commissioners and State Roads Commission agreed therein to make payment to the substituted contractor, as was provided in the original contract should be made to the Amiesite and Stone Company.

In the late spring or early summer of 1919 the State Roads Commission decided that it would be advisable, and for the best interest of all concerned in the improvement,

that asphalt be substituted for amiesite. Under the original contract, whereby the surfacing was to be of amiesite, only dirt shoulders were required, but the substitution of asphalt as a surfacing material necessitated the construction of cobble shoulders. The contract price for amiesite surfacing, as agreed in the original contract, was $1.48 per square yard, while the substitution of asphalt increased the price $.04 per square yard over that of amiesite, making the surfacing cost $1.52 per square yard, and also the additional cost of cobble shoulders made necessary by the substitution of asphalt for amiesite. Having decided that this change was advisable, a meeting was held in the office of the State Roads Commission, at which meeting there were present Mr. Mackall, the chief engineer of the State Roads Commission, Mr. Zouck, the president of the commission, Mr. Earp, the president of the Board of County Commissioners for Howard County, Mr. Graham, attorney for Mr. Bladen Lowndes, Mr. Hunt, an overseer on the farm of Mr. Lowndes, and Mr. Lawrence, representing the United States Fidelity and Guaranty Company. This meeting or conference was held during the summer of 1919 and prior to August 27th of that year. Following that meeting Mr. J. N. Mackall, chief engineer, issued an order, known as extra work order, as follows:

"State of Maryland,
"State Roads Commission,
Baltimore, Md.

"Order for extra work done under contract No. 453 on section of State Highway in Howard County.
"Dear Sir:

"In accordance with paragraph 30 under contract No. 453 you are hereby ordered to do the following extra work:

"7,000 sq. yds. cobble paving at $1.67..... $11,690.00
"Excess cost on 30,000 sq. yds. asphalt paving at $ .04.........................    1,200.00
                                             _____
                                             $12,890.00

"It is estimated that the cost of this work will be $12,890.00.

"Yours very truly,

J. N. MACKALL,

"Chief Engineer.

"Approved August 27, 1919.

"F. H. ZOUCK,

"Chairman."

Under the terms of the contract the engineer was required to make monthly estimates of the work done during the preceding month and certify the amount found to be due the contractor for work thus estimated, which certificate, together with the estimate, was required to be furnished to the County Commissioners, and formed the basis of the payment made to the contractor, one-half of the total amount due being paid by the County Commissioners and the other one-half by the State Roads Commission. The first certificate and estimate received by the County Commissioners after the meeting in Mr. Mackall's office, at which it is claimed asphalt was substituted for amiesite, was estimate No. 10, according to which estimate the amount due the contractor was $22,-350.99. Among the items making up this estimate was amiesite construction, 22,089 square yards, at $1.48, and cobble shoulders 4,747 square yards, at $1.67. One-half of the amount shown by this estimate to be due the contractor was paid by the County Commissioners of Howard County; the said estimate and certificate included the work done from September 25th, 1919, to June 19th, 1920. The next succeeding certificate and estimate, being No. 11 for work done by the contractor from June 19th, 1920, to August 5th, 1920, was made by the engineer on August 9th, 1920, and included in estimate No. 11 were these items, "Amiesite Construction, at $1.52, $46,996.95," and "7,130.7 cobble shoulders, at $1.67, $11,908.27." Certificate and estimate No. 12, being the final estimate at the completion of the road, was dated December 31st, 1920, for work from August 5th, 1920, to October 5th, 1920, being, as stated, the final estimate. Esti-

mate No. 12 contained these items: "31,047 Sy., Amiesite Construction $47,191.44" and "7,130.7 Sy. cobble shoulders $11,908.27." The one-half of the amount shown by estimates 11 and 12 as being due the contractor, which was to have been paid by the State Roads Commission, was paid by that commission. The remaining one-half, for which it is claimed the County Commissioners of Howard County were liable, was not paid, payment being refused for the reason, as claimed by the County Commissioners, that their board had not legally authorized the construction of any cobble shoulders along the road under improvement. Failing to obtain payment from the County Commissioners of Howard County, the appellee, Charles T. Mattehws, brought suit against the County Commissioners of Howard County in the Circuit Court for Howard County. The case was subsequently removed for trial to Baltimore County, where a jury trial was had, resulting in a verdict and judgment for the plaintiff, appellee here, for the sum of $8,956.12. It is from this judgment that the County Commissioners of Howard County have taken this appeal.

During the progress of the trial the appellant reserved fifteen exceptions, thirteen having been taken to the action of the trial court in the rulings upon evidence, the fourteenth, from the action of the court in refusing the motion of the appellant to strike out the order for extra work, being plaintiff's exhibit No. 3, and the fifteenth to the rulings of the court on the prayers. We are now asked to review and pass upon the correctness of the rulings of the lower court as contained in these exceptions.

The contract of April 17th, 1918, between the appellant and appellee, recited in the preamble the making of the original contract of December 1st, 1916, between the appellant and the Amiesite and Stone Company, for the construction or improvement of the Mike's Quarter Road, in Howard County, after all of the necessary preliminaries had been complied with; that bond was furnished by the original contractor, upon which bond the United States Fidelity and

Guaranty Company was surety; that the Amiesite and Stone
Company had, for some time prior to April 17th, 1918, been
in default; that the County Commissioners, in accordance
with the provisions of paragraph 17 of the specifications
forming part of the original contract, formally declared the
said original contract and agreement to be in default; that
after complying with the terms of the original contract in
case of default, and pursuant to the authority set forth in
said paragraph 17, the County Commissioners had sublet
the contract for building said road to Charles T. Matthews,
the appellee; and continued by providing as follows:

> "Now this agreement witnesseth in consideration of
> the payments hereinafter specified to be made by said
> County Commissioners to the said 'contractor,' as well
> as in consideration of the agreements, terms and con-
> ditions mentioned and referred to in the payments
> and specifications for the building of said road as set
> forth in contract No. 453, of the State Roads Commis-
> sion of Maryland, which plans and specifications are
> hereby expressly made part and parcel of this agree-
> ment by reference thereto as fully as if the same were
> set forth herein in full, the said contractor does hereby
> agree with the County Commissioners aforesaid, that
> he will well and faithfully build and construct said
> section of said highway, in accordance with each and
> every obligation, stipulation, term and, provisions con-
> tained in said specification herein referred to at and for
> the sum equal to the agreed price of work, labor and
> supplies, done and furnished at the prices and rates
> named therefor in the proposal attached to said specifi-
> cations, and well and faithfully comply with and per-
> form each and every obligation imposed upon said con-
> tractor by said specifications, or the terms of said
> award.
>
> "And the said County Commissioners of Howard
> County in consideration of the premises do hereby agree
> with the contractor that they will pay to the contractor
> when and as due and payable under the terms and pro-
> visions of said specifications and award fifty per cent.
> of the above mentioned sum; that they will well and·

faithfully comply with and perform each and every obligation imposed upon them by said specifications and the terms of said award; and the State Roads Commission hereby agrees, as evidenced by its approval hereof, to pay to the contractor by the issuance of warrants upon the Comptroller of the Treasury of the State of Maryland, when and as the same are due and payable under the terms of said specifications and award, the remaining fifty per cent. of the above mentioned sum, and that it will well and faithfully comply with and perform each and every obligation imposed upon it by said specifications or the terms of said award and in accordance with the provisions of Chapter 217 of the Acts of the General Assembly of Maryland passed at its January session, 1910.

"In witness whereof the parties to these presents have hereunto set their hands the day and year first above mentioned, in triplicate.

"Chas. T. Matthews.

"Witness:

H. C. Hines, Jr.

"The United States Fidelity and Guaranty Company, surety on the bond of the Amiesite and Stone Company referred to herein, hereby assents to the above contract."

It will be noted, that while this contract was by and between the appellant and appellee, the State Roads Commission agreed to pay to the appellee its portion of the cost, as evidenced by its approval of the contract, and the United States Fidelity and Guaranty Company, the surety on the bond of the Amiesite and Stone Company, formally assented thereto.

The first contention of the appellant is that the new or substituted contract of April 17th, 1918, made with the appellee, is void, because the provisions of chapter 217 of the Acts of 1910, which contains all of the authority given to the appellant to make a contract for the construction or improvement of a state aided road, and within the terms of which said act must be found the grant of powers which may

be legally exercised in that respect, were not complied with,
in that: (a) Said new contract was not awarded to the low-
est responsible bidder; and, (b) that no bond for the faithful
performance of the contract was exacted or required of the
appellee, the substituted contractor.

Baltimore City and the counties of Maryland are public
political territorial divisions of the State, established for
public political purposes connected with the administration
of the government, possessing the character, and endowed
with the powers, of corporations, according to the laws sev-
erally applicable to them. They are mere instruments of
government, appointed to aid in the administration of pub-
lic affairs, and are parts of the State. As public corpora-
tions they are to be governed according to the laws of the
land, and are subject to the control of the Legislature.
*Regent's Case,* 9 G. & J. 397-401; *State* v. *B. & O. R. R.,*
12 G. & J. 399-439; *Baltimore* v. *State,* 15 Md. 462. Coun-
ties are political divisions of the State, organized with a
view to the general policy of the State, and the functions
and powers exercised by them have reference mainly to such
policy, which general State policy is, when applied to a par-
ticular county, modified and adjusted so as to meet the local
conditions and best serve the needs of people resident within
its territorial boundaries. Counties, like municipal corpora-
tions, can only exercise such powers as are expressly granted
by the State, together with such implied powers as are nec-
essary for the execution of the powers expressly granted.
Officers of a county are public agents of limited powers, and
cannot bind the public by their acts in excess of the delegated
power, nor can an expressly delegated power be exercised
in a manner contrary to the mandatory language of the en-
abling statute. The rule relieving municipal corporations
from liability for the unauthorized acts of their officers and
agents, although done *officii colore,* without some act of rati-
fication or adoption, is expressed and applied in numerous
cases decided by this court. *Baltimore* v. *Eschbach,* 18 Md.
276; *Baltimore* v. *Reynolds,* 20 Md. 1; *State* v. *Kirkley,* 29

Md. 85; *Horn* v. *Baltimore*, 30 Md. 218; *Gill* v. *Baltimore*, 31 Md. 375; *Baltimore* v. *Musgrove*, 48 Md. 272; *Baltimore* v. *Keyser*, 72 Md. 106; *Packard* v. *Hayes*, 94 Md. 233; *Western Md. R. R. Co.* v. *Blue Ridge Co.*, 102 Md. 307; *Mealey* v. *Hagerstown*, 92 Md. 741.

This being the settled law of this State, it follows that if the contract before us was an unauthorized act of the County Commissioners of Howard County, or was the unauthorized act of their agent, without some act of ratification or adoption on their part, the contract is void. The appellant insists that the record discloses the above stated conditions to exist in this case, and therefore the contract is void. We cannot agree with this conclusion. It is admitted that the original contract of December 1st, 1916, with the Amiesite and Stone Company, was a proper and legal exercise of the powers granted to the appellant by Chapter 217 of the Acts of 1910, and that the power to make each and every clause of that contract is found in the express words of the statute, or is necessarily implied in order to give full force and effect to the expressly granted powers and carry out the legislative purpose and intent.

It is doubtless true that if the contract of April 17, 1918, between the appellant and appellee, had been an original contract for the construction of the road herein referred to, it would be void, unless there had been advertisement and an award made to the lowest responsible bidder, because the statute makes these provisions precedent conditions to the making of a contract; but it is to be remembered that this was not an original contract, but one entered into for the purpose of completing the construction of a road begun by the original contractor, and after the original contractor had defaulted. Chapter 217 of the Acts of 1910 contains no express provision applicable to a condition such as we have here, it makes no provision for the completion of a road where the original contractor is in default, yet it cannot be successfully contended that the powers expressly granted are not sufficient to deal with such a condition. The general

purpose of the Legislature was to empower the State Roads Commission and the county commissioners of any county to construct or improve roads throughout the State in the manner set forth in the act; forty per cent. of the cost to be paid out of general county funds, ten per cent. to be paid by the petitioning landowners, and fifty per cent. to be paid out of the road funds of the State; it being the purpose and policy of the State to construct roads of a generally uniform character, the State as a whole bearing one-half of the cost. The act provided that, while the contract should be made by the county commissioners, it should be approved by the officials of the State Roads Commission, and that the construction, whether under an original contract or a substituted contract for the completion after default of the original contractor, should be under the control and general supervision of the State Roads Commission. Necessarily incident to the execution of the express authority and powers granted by the statute, is the power to make provision in the original contract for the completion of a road begun by a contractor who subsequently defaults. The statute provides that a bond for the faithful performance of the contract should be required by the county commissioners of the original contractor, and the condition of this bond is for the completion of the contract according to its terms and specifications. In case of default of the contractor, the county commissioners undoubtedly could have called upon the surety on the bond to complete the contract, or, if they saw fit, could enter into a new or substituted contract for its completion. Upon default the county commissioners did notify the surety on the bond, and subsequently, with the approval of the State Roads Commission and assent of the bonding company, entered into a new contract with the appellee, who was an employee of the surety; or in other words, when the substance of the new contract is examined, we find that, in effect, it provided that the surety on the bond of the original contractor agreed to complete the construction or improvement of this road in accordance with every provision and stipulation of the original

contract and for the same unit prices. Even if the substituted contractor was an entirely new party and a stranger to the original contract, yet the surety on the original bond,. when it assented to the substituted contract, would be liable for the complete fulfillment of the original contract. It will therefore be seen that the express power given in the statute to construct a road carried with it the necessarily implied power to complete the construction or improvement in case of default by the original contractor, and that it was unnecessary to readvertise for the completion of the construction or to require a new bond of the contractor who was to complete the road, after assent had been given by the surety on the original contractor's bond.

The second contention of the appellant is that, even though the substituted contract of April 17th, 1918, was valid, yet the change in that contract from amiesite to asphalt surfacing, which change made it necessary to construct cobble shoulders at a cost of approximately $12,000, was illegal and unauthorized, either by the terms of the statute or by the provisions of the substituted contract. We have shown that all of the provisions of the substituted contract which are identical with the original contract were either expressly authorized by the statute, or the power was necessarily implied in order to execute the express powers granted by the statute. It only becomes necessary to examine the provisions of the substituted contract, in order to determine the validity of the second contention of the appellant.

Section 19 of the original and substituted contract, under the head "Work to be done," provides as follows:

> "The contractor shall do such additional work other than that herein mentioned, as may be necessary, in the opinion of the engineer, to fully complete the improvement herein planned and contemplated, and will receive in full payment for such additional work the same prices in the same manner as if such work had been included in the list of 'estimated quantities.' Only such work ordered in writing by the engineer and as cannot reasonably, in the opinion of the engineer, be

included under the classifications, will be claimed or allowed for payment as 'extra work.' "

Section 13, under the head of "Definitions," provides:
"The right is reserved by the County Commissioners to make such changes in the plans and specifications as may from time to time appear necessary or desirable and as may be recommended by the engineer, and such changes shall in no wise invalidate the contract. Should such changes be productive of increased cost to the contractor, a fair and equitable sum therefor, to be agreed upon in writing before such changed work shall have been begun, shall be added to the contract price, and in like manner deduction shall be made. No allowance will be made for anticipated profits."

We will first dispose of section 19, quoted above. The proper meaning of this section is that the engineer is given the power to order a contractor to do additional work, other than that mentioned in the contract, the extra work being required to fully complete the improvement *planned* and *contemplated* in the contract. But it does not authorize the engineer, by issuing "extra work orders," to change the improvement or plan set forth in the contract. To illustrate, if the plan set forth in the contract was to construct a gravel road, this clause would not authorize the engineer, by "extra work orders," to change the plan of construction to concrete. As the plan of construction contemplated in the contract before us was for the construction of a road of amiesite surfacing which did not require other than earth shoulders, section 19 does not authorize the engineer by "extra work order" to change the plan so as to make the surfacing asphalt, thereby necessitating the construction of cobble shoulders. This section is intended to give and does give to the engineer the power to order extra work which in his opinion is necessary for the furtherance or completion of the plan of road designated in the contract, but it is so limited and goes no farther. This power given to the engineer is important and essential for the proper completion of the plan of construction, as it

is clear that many contingencies, unforeseen and not provided for in the contract, may arise in the course of construction, which would necessitate extra work in order to fully complete the original design or plan. But in our opinion the change from amiesite to asphalt surfacing, with the attendant construction of cobble shoulders, is not authorized by section 19, dealing with extra work ordered by the engineer. Section 13 deals with and is intended to cover conditions such as are presented in this case. It provides that the county commissioners reserve the right to make changes in the plans and specifications, as laid down in the contract, which from time to time may appear necessary or desirable, provided such changes be recommended by the engineer, and that such changes, when made, in no wise invalidate the contract. It then provides that should such changes be productive of increased cost to the contractor, a fair and equitable sum therefor, to be agreed upon in writing before such changed work shall have been begun, shall be added to the contract price. Under this section, the right to make changes in the plans and specifications is reserved to the county commissioners and they are empowered to make such changes as to them seem necessary or desirable and are recommended by the engineer. The change here made resulted in increased cost to the contractor, and therefore under the terms of section 13 a fair and equitable sum for such increased cost must be agreed upon in writing before the changed work was begun. Or in other words, to make a valid change in the plans and specifications three distinct things or conditions must concur: First, that the change be deemed necessary or desirable by the county commissioners; second, that the engineer recommend the same; and third, that a fair and equitable sum for the work necessitated by the change be agreed to in writing. Whether these three essentials were complied with presented questions of fact to be passed upon by the jury. There was evidence tending to prove each and all of them, and the jury having passed upon the evidence and established the questions of fact, their finding is not open to

review by this Court. That portion of section 13 which provides: "Should such changes be productive of increased cost to the contractor, a fair and equitable sum therefor to be agreed upon in writing before such changed work shall have been begun, shall be added to the contract price, and in like manner deductions shall be made," was inserted therein for the primary purpose of reducing to writing the amount agreed upon as fair and reasonable extra compensation to the contractor by reason of the change in the plan. This was done because the compensation in the original plan and specifications was definitely agreed to and put in writing; therefore any change of the plan or specification, which would bring about a change of compensation to the contractor, was also required to be reduced to writing before the work made necessary by the change was begun, so that when the work necessitated by such change was completed there could be no question raised as to the amount of compensation due the contractor therefor. Keeping the primary purpose in view, we do not think that the writing required by this portion of section 13 necessitated the signature of the contracting parties, and if the jury should find that the change was previously authorized or subsequently ratified by the County Commissioners, the "extra work order" issued by the chief engineer, definitely and particularly setting forth the amount of the extra compensation, was a substantial and sufficient compliance with this portion of section 13, and from which the jury might find a compliance with the requirement that the sum agreed upon should be in writing.

We have examined the granted prayers of the plaintiff, being the plaintiff's first, second, and fifth prayers, and when taken in connection with the granted prayer of the defendant, being the defendant's eleventh prayer, we think they fully and fairly presented the case to the jury; and we find no error in the refusal of the court to grant the defendant's first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth prayers; nor in the action of the lower court in overruling

the motion of the defendant to strike from the evidence the order for extra work.

We have carefully examined the exceptions taken by the defendant to the rulings of the court on the evidence, and in view of what we have said, find no reversible error contained in any of these exceptions. It follows that the judgment must be affirmed.

*Judgment affirmed, with costs.*