MAYOR AND CITY COUNCIL OF BALTIMORE *v.*
BOARD OF SUPERVISORS OF ELECTIONS
OF BALTIMORE CITY.

[No. 111, October Term, 1928.]

*Decided October 17th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*A. Walter Kraus, City Solicitor,* and *Allen A. Davis, Assistant City Solicitor,* with whom was *Lindsay C. Spencer, Assistant City Solicitor,* on the brief, for the appellant.

*Thomas H. Robinson, Attorney General,* and *Willis R. Jones, Assistant Attorney General,* for the appellee.

*Randolph Barton, Jr.,* and *Stuart S. Janney* filed a brief on behalf of the Baltimore Association of Commerce.

URNER, J., delivered the opinion of the Court.

It is provided by the Constitution of Maryland, in section 7 of article 11, that, except for temporary and emergency purposes, arising from a deficiency in the city treasury, or the necessity of maintaining the police or preserving the safety and sanitary condition of the city, no debt "shall be created by the Mayor and City Council of Baltimore," unless it "be authorized by an Act of the General Assembly of Maryland, and, by an ordinance of the Mayor and City Council of Baltimore, submitted to the legal voters of the City of Baltimore, at such time and place as may be fixed by said ordinance, and approved by a majority of the votes cast at such time and place."

Ordinance No. 537 of the Mayor and City Council of Baltimore provided for the creation of a public debt of the municipality to an amount not exceeding $2,500,000, in the event that the ordinance should be approved by a majority of the legal votes cast at the election to be held in the city on November 6th, 1928, and if the proposed indebtedness should also be authorized by an Act of the General Assembly at its session in the year 1929.

The Supervisors of Elections declined, on the advice of the Attorney General, to print on the ballots for use at the election of November 6, 1928, the question designed by the ordinance to be submitted to the voters of the city, because the Legislature had not authorized the creation of the debt for which the ordinance made provision. In this mandamus suit the refusal of the supervisors to submit the ordinance to the voters was held by the lower court to have been justified, and on appeal its decision was affirmed by a *per curiam* order.

The desire of the city government was to utilize the election of 1928 for the intended referendum in order to avoid the expense of holding a special election for that purpose after the 1929 session of the General Assembly, if the ordinance received its sanction, or a delay of nearly two years until the next general election afforded such an opportunity. It is unfortunate that this desire could not be gratified. But

the duty of the courts is to give due regard and effect to the constitutional limitation to which the asserted right is subject.

It was the city's theory that the purpose of the Constitution to require the dual sanction of the General Assembly and of the voters of Baltimore for the creation of a municipal debt could be validly accomplished by a declaration of legislative approval made after the will of the voters on the subject had been ascertained. This view finds no support in the literal terms of the requirement, and, in our judgment, is not in accord with its real intent. The prescribed conditions for the valid creation of such a debt are authorizations by an act of the General Assembly, and by an ordinance submitted to and approved by the voters. The referendum is both nominally and logically the final act in the requisite series of approvals. It is the usual purpose of a referendum to obtain an expression of the popular will as an ultimate decision of the question submitted. If the order of approval indicated in the Constitution should be reversed by a postponement of the legislative action until the issue had been presented at the polls, the sanction of the voters would not be final and conclusive but would be possibly futile. Its effect would be contingent upon the result of the subsequent exercise of legislative judgment upon the proposal. That judgment was, of course, intended to be discriminating and not perfunctory. The duty imposed upon the General Assembly was to decide independently whether a municipal loan for a particular purpose and amount should be authorized. The performance of such a duty might be embarrassed if the consequence of adverse action by the Legislature would be to disappoint the will of the voters expressed on the subject under a prior referendum.

While the specific question raised in this case has not heretofore been presented to this court for adjudication, the constitutional provision now under consideration has been discussed in opinions upon related questions and has been construed as intending that the authorization by the General Assembly should precede the popular ratification. In *Baltimore v. Gill*, 31 Md. 375, the inquiry was whether a certain

financial project, described in the contested ordinance, involved the creation of a debt within the meaning of the Constitution and hence required authorizations by the Legislature and the voters, for which the ordinance did not provide. Because of that omission and of the court's conclusion that the effect of the ordinance would be to create a debt, it was held to be void. In deciding that the ordinance "was within the scope and purview of the constitutional provision," the court said that "the Mayor and City Council were prohibited from passing it without the previous authority of an Act of Assembly and the sanction of a vote of the citizens."

In *Stanley v. Baltimore*, 146 Md. 277, where the question was whether the rate of interest specified for a debt of the city in an authorizing act of assembly, and in an ordinance approved by the voters, could be reduced by a later municipal enactment, the court said, in reference to the creation of indebtedness by the city: "It is clear that, with only the exceptions above set forth, no debt can be created or credit involved, unless it have, first the authorization of an act of the General Assembly of Maryland, and, secondly, the approval of a majority of the legal voters, after a submission of the question pursuant to an ordinance."

It was decided in *Baltimore v. Bond*, 104 Md. 590, that an ordinance providing for a loan in aid of a designated public purpose, subject to approval by the voters, was invalid because legislative authorization was not to be found in the statutory provision by which the ordinance was sought to be supported.

The numerous loans obtained by the City of Baltimore for purposes to which the constitutional restriction is applicable have with few exceptions been authorized primarily by act of assembly, and then by ordinance submitted to the people and by them approved. There have been some occasions when the legislative sanction was of indebtedness proposed in ordinances previously passed, but the submission to popular vote followed both the ordinance and the acts. There is one cited instance, in 1879, where there was a resort to the plan, here considered, of providing for a referendum on the ordi-

nance before the approval of the debt by the Legislature. It is not necessary to decide in this case whether approving legislation enacted after the passage of the ordinance, but before its submission to the voters of the city, is a sustainable sequence of authorization. Obviously, however, the reasons which compel us to hold invalid a proposed debt referendum in anticipation of action by the General Assembly do not apply with equal force when the submission to popular vote is preceded by an authorizing statute enacted after the ordinance which provides for the indebtedness. As the State is the source of the power to be exercised by the municipality, and as the sanction of the Legislature is a prerequisite to the valid creation of such a debt as the one here involved, the normal order of authorizations, and the one indicated in the Constitution, is first the Act of the General Assembly, and next an ordinance exercising the authority thus conferred and submitting the proposal to the electorate for final determination.