BOWIE INN, INC. ET AL. *v.* CITY OF
BOWIE ET AL.

[No. 58, September Term, 1974.]

*Decided March 24, 1975.*

232

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Alan I. Baron* and *Daniel I. Sherry*, with whom were *Stephen H. Sachs* and *Frank, Bernstein, Conaway & Goldman* and *Henry F. Leonnig* on the brief, for appellants.

*Joseph G. Finnerty, Jr.*, for appellees.

ELDRIDGE, J., delivered the opinion of the Court. O'DONNELL, J., dissents and filed a dissenting opinion at page 249 *infra.*

On March 8, 1971, the City Council of Bowie enacted an ordinance designed to combat the problem of roadside litter in that municipality. Ordinance 0-4-71 made it unlawful for any person to sell any soft drink or malt beverage unless a deposit of at least five cents on each container were charged at the retail level and unless the deposit were given back upon return of the containers to the retail outlet. The ordinance provided that violation of any of its provisions would be a misdemeanor, subjecting the violator to a fine of up to $100 and imprisonment for a maximum of 30 days.

Two suits in equity were filed, seeking declarations that Ordinance 0-4-71 was invalid and seeking to enjoin the enforcement of the ordinance. The plaintiffs in the first suit were the Bowie Inn, Inc., and other retail merchants located in Bowie who sold soft drinks or malt beverages. The plaintiffs in the second case were the Maryland Soft Drink

Association, Inc. and several bottlers and distributors of soft drinks who serve the Bowie area. The two cases were consolidated for trial, and the consolidation continues for purposes of appeal.

The cases were tried before the Circuit Court for Prince George's County (William H. McCullough, J.). On March 21, 1974, the court in an oral opinion held Ordinance 0-4-71 to be valid. After the filing of an appeal to the Court of Special Appeals, we issued a writ of certiorari prior to a decision by the Court of Special Appeals.

The petitioners challenged Ordinance 0-4-71 on six grounds in the circuit court, and they reiterate those same grounds here. Petitioners argue: (1) that the ordinance violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Art. 23 of the Maryland Declaration of Rights by imposing a mode of doing business on retailers within Bowie and distributors to Bowie which bears no real and substantial relation to the reduction of litter in Bowie; (2) that the ordinance violates the Due Process Clause because its definition of "soft drink" is vague; (3) that the ordinance denies to the petitioners the equal protection of the laws in violation of the Fourteenth Amendment because it creates "an artificial and arbitrary classification" of soft drink and malt beverage containers which is not different from containers for other products; (4) that the Bowie ordinance violates the Commerce Clause of the United States Constitution because the benefit to be achieved through the ordinance is negligible when compared to the burden on interstate commerce created by the ordinance; (5) that the City of Bowie was not authorized by its charter or any act of the State Legislature to enact the ordinance; and (6) that the State Legislature has preempted the matter of deposit requirements on malt beverage containers, thereby denying to municipalities the right to enact legislation on this subject. We reject all of these arguments and affirm the decision of the circuit court upholding Ordinance 0-4-71.

Petitioners presented a variety of evidence before the circuit court for the purpose of demonstrating that the

ordinance would constitute a heavy burden on businesses in Bowie and their distributors, and that the ordinance would fail to achieve its aim in reducing litter in Bowie. The evidence, with regard to the burden on businesses located in Bowie, was presented through the testimony of four Bowie retailers. They indicated there were many sellers of soft drink and malt beverages located outside of Bowie but easily accessible to Bowie residents, that some Bowie residents would buy beer outside the city rather than buy it in returnable containers, that some soft drinks and beers are not available in returnable containers, that added expenses for handling returnables would be incurred by Bowie retailers, and that sales of beer in reusable containers by Bowie retailers had been decreasing. All the retailers testified that their businesses would suffer as a result of the ordinance. One retailer claimed that the ordinance would put him out of business. Testimony elicited from representatives of two soft drink bottlers and a beer distributor indicated that consumer demand for returnable beverage packaging was declining and that bottlers would be unwilling to change their marketing practices for the benefit of Bowie retailers. Petitioners also presented the testimony of Robert Weinberg, a beer marketing expert, who opined that a decrease in malt beverage sales by Bowie retailers of as much as 50% might result from the ordinance. Four retailers from Vermont and a beer distributor serving that state, where a mandatory deposit law had been enacted, testified that they had suffered significant losses in beer and soft drink sales since enactment of the Vermont statute.

With regard to the effectiveness of the Bowie ordinance in preventing littering in Bowie, petitioners presented the testimony of Christopher Gilson, a "litter control consultant." Mr. Gilson testified that the ordinance would be ineffective. He suggested alternative methods for controlling litter in Bowie.

The respondents — City of Bowie and various concerned public officials — presented the testimony of Aldene Bain, who described two litter pickups which had been carried out by an environmental group and a group of high school

students. She testified that a large quantity of bottles and cans had accumulated on the roadsides during the six months between the first and second pickup campaigns. Respondents also presented testimony that, following the passage of a mandatory deposit statute in Oregon, a substantial reduction in roadside litter took place.

In the circuit court, Judge McCullough concluded that the ordinance would cause the Bowie retailers to lose some customers and would increase their cost of doing business. However, he viewed the fears of the Bowie retailers that their business would be severely damaged as "highly speculative." He also found that the ordinance had a logical connection to resolving the problem of litter in Bowie, although the effectiveness of the legislation was uncertain.

### (1)

Petitioners' initial contention is that Ordinance 0-4-71 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Art. 23 of the Declaration of Rights of Maryland.[1] They argue that the evidence presented in the lower court establishes that the ordinance will not achieve its goal of reducing litter in Bowie and that, therefore, it violates due process because of the economic burden it imposes on them. They rely principally on *Md. Bd. of Pharmacy v. Sav-A-Lot, Inc.,* 270 Md. 103, 311 A. 2d 242 (1973).

In *Sav-A-Lot,* Maryland Code (1957, 1971 Repl. Vol.), Art. 43, § 266A (c) (4) (iv), which enabled the Maryland Board of Pharmacy to reprimand or suspend or revoke the license of any pharmacist who advertised the prices of prescriptions, dangerous or nonproprietary drugs, was held to be invalid. The Court in *Sav-A-Lot* reviewed extensive evidence

---

1. Article 23 of the Declaration of Rights provides that "[n]o man ought to be . . . deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." This Court has long equated the term "law of the land" with "due process of law" as used in the Fourteenth Amendment. *See, e.g.,* In re Easton, 214 Md. 176, 187, 133 A. 2d 441 (1957); Solvuca v. Ryan & Reilly Co., 131 Md. 265, 270, 101 A. 710 (1917); Pub. S. Com. v. N. C. Rwy. Co., 122 Md. 355, 386, 90 A. 105 (1914); Baltimore Belt R.R. v. Baltzell, 75 Md. 94, 99, 23 A. 74 (1891).

concerning the adverse effect that the statute had on consumers and concerning whether the statute had any connection with the purposes which the Board of Pharmacy claimed that it served. The Court concluded that the means selected (the ban on advertising) had no real and substantial relation to the objects sought to be obtained (prevention of increased demand for drugs; monitoring of prescriptions by pharmacists; protection of the profession of pharmacy from demeaning rivalry; and prevention of pressure on doctors to prescribe larger quantities of drugs). *Md. Bd. of Pharmacy v. Sav-A-Lot, supra,* 270 Md. at 109, 116.

The principles set forth in *Sav-A-Lot* do not lead to the conclusion urged by petitioners. The test for constitutionality under the Due Process Clause is whether a statute, as an exercise of the state's police power, bears a real and substantial relation to the public health, morals, safety, and welfare of the citizens of this state. *Md. Bd. of Pharmacy v. Sav-A-Lot, supra,* 270 Md. at 106; *Davis v. State,* 183 Md. 385, 397, 37 A. 2d 880 (1944). The exercise by the Legislature of the police power will not be interfered with unless it is shown to be exercised arbitrarily, oppressively or unreasonably. *Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 48, 300 A. 2d 367 (1973). The wisdom or expediency of a law adopted in the exercise of the police power of a state is not subject to judicial review, and the law will not be held void if there are any considerations relating to the public welfare by which it can be supported. *Sav-A-Lot, supra,* 270 Md. at 106; *Salisbury Beauty Schools v. St. Bd., supra,* 268 Md. at 48. Such a statute carries with it a strong presumption of constitutionality. *Sav-A-Lot, supra,* 270 Md. at 106; *Salisbury Beauty Schools v. St. Bd., supra,* 268 Md. at 48-49.

Petitioners are, in effect, asking us to substitute our judgment concerning the wisdom of Ordinance 0-4-71 for that of the City Council of Bowie. Before the enactment of Ordinance 0-4-71, a public hearing was held at which representatives of the soft drink and container industries presented their objections to the ordinance to the City Council. There was also testimony favorable to the

ordinance at the hearing, and the results of the two roadside litter collections were presented to the City Council.[2] After enactment of Ordinance 0-4-71, petitioners took their arguments and similar testimony to the circuit court, and on appeal, they ask us to decide that their evidence proves that the City Council acted arbitrarily and unreasonably in enacting the ordinance.

We conclude that, although the petitioners by the evidence presented in the circuit court may have cast some doubt on the wisdom of Ordinance 0-4-71, they have failed to demonstrate that it bears no real and substantial relation to the public health, morals, safety, and welfare of the citizens of Bowie. There is a clear relation between the mandatory deposit requirement and the object of reducing litter in Bowie. The City Council of Bowie could rationally conclude that the deposit law should motivate consumers to return containers. Moreover, respondents produced evidence of the need for a litter control measure in Bowie and evidence that a similar law had been effective in another state.[3]

Courts are under a special duty to respect the legislative judgment where the legislature is attempting to solve a serious problem in a manner which has not had an opportunity to prove its worth. The use of mandatory deposit statutes as a means of controlling litter has not been extensively tried, particularly on a municipal level. Thus, the situation here is in sharp contrast with that in *Md. Bd. of Pharmacy v. Sav-A-Lot, supra,* where the Court could examine the experience under the statute over a period of several years. Here, invalidation of the ordinance would deprive the City Council of Bowie and any other legislative

2. A prior Bowie ordinance which had prohibited the retail sale of beverages in non-returnable containers had been enacted on July 20, 1970, and repealed on March 8, 1971, when Ordinance 0-4-71 was enacted. At the hearings on the prior ordinance, witnesses representing bottlers and container manufacturers, as well as businessmen from Bowie, spoke in opposition to the ordinance. Several witnesses testified in favor of the ordinance, and the results of the first roadside litter collection were reported to the City Council.

3. A due process challenge to a statewide mandatory deposit statute, similar to the Bowie ordinance, was rejected in American Can Company v. Oregon Liquor Control Commission, 15 Or. App. 618, 517 P. 2d 691, 703-704 (1973).

body contemplating such a law of any opportunity to discover whether the ordinance will be good, bad or indifferent in its results. The words of Mr. Justice Frankfurter in *American Federation of Labor v. American Sash and Door Co.*, 335 U. S. 538, 553, 69 S. Ct. 258, 265, 93 L. Ed. 222, 6 A.L.R.2d 481 (1949) (concurring opinion), are particularly appropriate:

> "Even where the social undesirability of a law may be convincingly urged, invalidation of the law by a court debilitates popular democratic government. Most laws dealing with economic and social problems are matters of trial and error. That which before trial appears to be demonstrably bad may belie prophesy in actual operation. It may not prove good, but it may prove innocuous. But even if a law is found wanting on trial, it is better that its defects should be demonstrated and removed than that the law should be aborted by judicial fiat. Such an assertion of judicial power deflects responsibility from those on whom in a democratic society it ultimately rests — the people."

We find petitioners' claim, that they have been denied due process because of the asserted arbitrary nature of Ordinance 0-4-71, to be without merit.

### (2)

Petitioners' next contention is that Bowie Ordinance 0-4-71, which is a criminal statute, violates the Fourteenth Amendment's Due Process Clause because its definition of "soft drink"[4] is vague. Petitioners argue that certain

---

**4.** The ordinance defines "soft drink" as follows:

"Soft drink beverages means ginger ale, root beer, sarsaparilla, pop, any mineral waters, soda waters, cola, or other carbonated or non-carbonated beverages, artificial mineral waters in liquid form commonly known as soft drinks. Soft drink beverages does not include dairy products or fruit juices."

The possible difficulties of defining "soft drink" are discussed in Note, *State and Local Regulation of Non-returnable Beverage Containers*, 1972 Wis.L.Rev. 536, 542-543. The authors of the note comment favorably on Bowie's definition. *Id.* at 543.

beverages, such as Gatorade or Metrecal, are not clearly within or without the definition of soft drink beverages.

The general principle applied to claims that a criminal statute is void for vagueness was set forth in *United States v. Harriss*, 347 U. S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954) as follows:

> "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."

Or as the Court earlier stated in *Connally v. General Const. Co.*, 269 U. S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926):

> " That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. International Harvester Co. v. Kentucky, 234 U.S. 216, 221, 34 S.Ct. 853, 58 L.Ed. 1284; Collins v. Kentucky, 234 U.S. 634, 638, 34 S.Ct. 924, 58 L.Ed. 1510."

*See also Smith v. Goguen*, 415 U. S. 566, 94 S. Ct. 1242, 1246, 39 L.Ed.2d 605 (1974); *McGowan v. Maryland*, 366 U. S. 420, 428, 81 S. Ct. 1101, 1106, 6 L.Ed.2d 393 (1961); *Giant of Md. v. State's Attorney*, 267 Md. 501, 514-515, 298 A. 2d 427, *appeal dismissed*, 412 U. S. 915, 93 S. Ct. 2733, 37 L.Ed.2d 141 (1973); *Potomac Sand & Gravel v. Governor*, 266 Md.

358, 379, 293 A. 2d 241, *cert. denied,* 409 U. S. 1040, 93 S. Ct. 525, 34 L.Ed.2d 490 (1972).

The definition of "soft drink" in the ordinance gives "a person of ordinary intelligence fair notice" as to which beverages are within the deposit requirement. The definition is not "so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application." In our opinion the definition in the ordinance rather completely describes what is included in the category of "soft drink" and what is not.

Laws are not "invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language," *United States v. National Dairy Products Corp.,* 372 U. S. 29, 32, 83 S. Ct. 594, 597, 9 L.Ed.2d 561, *reh. denied,* 372 U. S. 961, 83 S. Ct. 1011, 10 L.Ed.2d 13 (1963); *United States v. Harriss, supra,* 347 U. S. at 618. Thus, the fact that there may exist a beverage which is not clearly within or without the definition of "soft drink" does not require that the ordinance be invalidated. In the unlikely case that a retailer had any doubts with respect to what is included in the definition, he could request an opinion from the agency charged with enforcement of the ordinance or seek a declaratory judgment that a particular beverage is not included.

(3)

The third contention made by petitioners is that the ordinance denies them the equal protection of the laws in violation of the Fourteenth Amendment because it creates "an artificial and arbitrary classification" of soft drink and malt beverage containers. It is argued that soft drink and beer containers are not different from other beverage containers in any respect having a substantial relation to the object of controlling litter. Petitioners contend, in effect, that Bowie must regulate all other beverage containers, such as milk cartons and bottles, fruit juice cans, etc., in order to justify its regulation of soft drink and malt beverage containers.

The cases applying the Fourteenth Amendment's Equal Protection Clause have required that a statutory classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Reed v. Reed,* 404 U. S. 71, 76, 92 S. Ct. 251, 254, 30 L.Ed.2d 225 (1971); *Royster Guano Co. v. Virginia,* 253 U. S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989 (1920). *See also McGowan v. Maryland, supra,* 366 U. S. at 425; *Morey v. Doud,* 345 U. S. 457, 464-465, 77 S. Ct. 1344, 1 L.Ed.2d 1485 (1957); *Matter of Trader,* 272 Md. 364, 386, 325 A. 2d 398 (1974); *Md. St. Bd. of Barber Ex. v. Kuhn,* 270 Md. 496, 507, 312 A. 2d 216 (1973). The question of classification is for the Legislature, and the courts will not interfere "if any state of facts reasonably may be conceived to justify" the classification. *McGowan v. Maryland, supra,* 366 U. S. at 426. Moreover, "[a] classification having some reasonable basis does not offend against . . . [the equal protection] clause merely because it is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78, 31 S. Ct. 337, 340, 55 L. Ed. 369 (1911); *Adm'r, Motor Veh. Adm. v. Vogt,* 267 Md. 660, 671, 299 A. 2d 1 (1973).

Furthermore, legislative bodies are not required by the Equal Protection Clause to attack all aspects of a problem at the same time. The legislative body may select one phase of a problem and apply a remedy there, neglecting for the moment other phases of the problem. *Williamson v. Lee Optical,* 348 U. S. 483, 489, 75 S. Ct. 461, 465, 99 L. Ed. 563, *reh. denied,* 349 U. S. 925, 75 S. Ct. 657, 99 L. Ed. 1256 (1955).

The evidence presented in the circuit court that soft drink and malt beverage containers were particularly troublesome sources of litter and that a similar law had resulted in an improvement in roadside litter conditions in Oregon is sufficient to sustain Ordinance 0-4-71 as a rational means of obtaining cleaner roadsides in Bowie. The members of the City Council may well have concluded that soft drink and malt beverage containers were the principal source of that type of litter which most needed to be eliminated. They may

have decided that other beverage containers were less likely to be discarded along the roadside and thus did not constitute a threat to the environment of Bowie. They may have concluded that the requirement of a mandatory deposit on soft drink and malt beverage containers would be easier to carry out than a deposit requirement on all beverage containers since soft drinks and beer have traditionally been sold in returnable containers requiring payment of a deposit. In short, there are many reasonable grounds which may justify the ordinance.

Other state appellate courts have considered "equal protection" attacks on litter control laws aimed at certain types of beverage containers. In *Anchor Hocking Glass Corp. v. Barber,* 118 Vt. 206, 105 A. 2d 271 (1954), a Vermont statute which prohibited the sale of beer and ale in nonreturnable glass containers was upheld. The Vermont court rejected an equal protection challenge to the statute in the following words (*id.* at 276-277):

> " These facts show a large and increasing sale of ale and beer in these containers and their presence among the litter on the highways and adjacent lands to the injury of persons and property. This, no doubt, was known by the legislators. It is reasonable to believe that, being aware of these facts, they took steps by the passage of the act to effect a substantial reduction in the number of the articles among the litter and reduce to that extent the danger resulting therefrom. . . . The fact that there were other kinds of litter not covered by the act is no reason for declaring it invalid. . . . The legislators well may have found that these containers because of their number, construction and the likelihood of their being thrown away when empty, having no return value, caused special danger of injury and damage. . . .
>
> "It is clear that the facts show an obvious and real connection between the statute and the purpose for the application of the police power and

that the classification is based upon a difference having a reasonable and just relation to the object sought."

In *American Can Co. v. Oregon Liquor Control Com'n, supra,* 517 P. 2d 691, the Court of Appeals of Oregon upheld a state statute which required retailers to accept from consumers empty soft drink and beer containers and pay a refund on them. The statute imposed a similar duty on distributors with respect to the retailers. The court rejected an equal protection attack on the statute, saying *(id.* at 704):

" The fact that other containers may also create litter and solid waste does not invalidate the legislature's intent to deal with this species of solid waste and litter. As the United States Supreme Court said in Railway Express v. New York, 336 U.S. 106, 110, 69 S.Ct. 463, 93 L.Ed. 533 (1949), 'It is no requirement of equal protection that all evils of the same genus be eradicated or none at all.' . . ."

Petitioners rely upon *Md. St. Bd. of Barber Ex. v. Kuhn, supra,* 270 Md. 496, and *City of Baltimore v. Charles Center Parking, Inc.,* 259 Md. 595, 271 A. 2d 144 (1970), as support for their equal protection contention. Neither of these cases supports their argument. In *Kuhn,* this Court declared invalid Art. 43, § 529 (a) of the Maryland Code (1957, 1973 Supp.), to the extent that it forbade cosmetologists to perform for men the hair styling services which they were authorized to perform for women. In *Kuhn,* the Court examined the statute and found that the classification had no rational relationship to the protection of the public health, safety or morals since the cosmetologists were qualified to perform the services for women and there was no difference shown between men's and women's hair. *Kuhn, supra,* 270 Md. at 507-510. In the subject case the evidence demonstrates that there is a rational relation between the classification and the purpose of Ordinance 0-4-71.

In *City of Baltimore v. Charles Center Parking, Inc.,*

*supra,* this Court on equal protection grounds held invalid a Baltimore City ordinance which prohibited the painting of signs directly on the exterior walls of buildings but allowed billboards and posterboards to be attached to such walls. In that case, unlike the present case, the City presented absolutely no evidence to justify the challenged classification, and the Court had no basis on which to find a rational relationship between the ordinance and a legitimate governmental purpose.

In sum, we find that the City Council of Bowie established a reasonable ground for the classification of soft drink and malt beverage containers in its ordinance designed to protect against litter.

### (4)

Petitioners maintain the Ordinance 0-4-71 violates the Commerce Clause of the Federal Constitution by placing an unconstitutional burden on interstate commerce.[5] Petitioners assert that the ordinance will increase the cost of doing business to the Bowie retailers and will exclude certain distributors and bottlers from the Bowie market. The trial court found that there would be some increase in costs to the retailers, but rejected predictions of disaster as being "speculative." Judge McCullough also noted that only one of the distributors who testified said that the ordinance would cause distributors to cease doing business in Bowie. Thus, whatever "burden" the ordinance places on interstate commerce would appear to be of a very minor nature.

Petitioners' contention that the ordinance unduly burdens interstate commerce was effectively answered by the Supreme Court in *Huron Portland Cement Co. v. City of Detroit, Mich.,* 362 U. S. 440, 448, 80 S. Ct. 813, 818-819, 4 L.Ed.2d 852, 78 A.L.R.2d 1294 (1960), where the Supreme Court upheld a municipal smoke abatement ordinance. Mr. Justice Stewart said for the Court (*id.* at 448):

---

5. Article I, Section 8, Clause 3 of the Constitution of the United States provides: "The Congress shall have Power ... [t]o regulate Commerce ... among the several States ...."

" . . . State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand. Hennington v. State of Georgia, 163 U.S. 299, 16 S.Ct. 1086, 41 L.Ed. 166 . . . .

"It has not been suggested that the local ordinance, applicable alike to 'any person, firm or corporation' within the city, discriminates against interstate commerce as such. It is a regulation of general application, designed to better the health and welfare of the community. . . ."

The Bowie ordinance, though it may have some effect on bottlers outside of Maryland, does not discriminate against them. It affects all bottlers and distributors, whether in or out of this State, equally.

Petitioners argue that we should apply a "weighing test" to the Bowie ordinance. They rely upon *Pike v. Bruce Church, Inc.*, 397 U. S. 137, 90 S. Ct. 844, 25 L.Ed.2d 174 (1970), where the Supreme Court upheld an injunction against an administrative order under the Arizona Fruit and Vegetable Standardization Act. The state administrative order had prohibited respondent Bruce Church, Inc. from transporting uncrated cantaloupes from its Arizona ranch to a nearby California city for packing and processing. The parties in *Pike v. Bruce Church, Inc.* stipulated that the practical effect of the order was to force Bruce Church, Inc. to build a packing facility in Arizona at a cost of about $200,000. In striking down the order, the Court said (*id.* at 142):

"Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such

commerce is clearly excessive in relation to the putative local benefits. Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed. 852. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues, Southern Pacific Co. v. Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915, but more frequently it has spoken in terms of 'direct' and 'indirect' effects and burdens."

Assuming that a "weighing test" or "balancing approach" is applicable to a case such as this, we have no hesitancy in concluding that the putative local benefits of the Bowie ordinance clearly outweigh any burden which the ordinance might impose on interstate commerce. The benefit which the ordinance is designed to achieve is a substantially cleaner environment. The losses to Bowie retailers are, as the circuit court found, "speculative." The losses, if any, which distributors will have are even less certain. The distributors and bottlers can continue to sell all of their products to Bowie merchants. If some products are available only in non-returnable containers, the retailers can continue to sell them. They need only collect a deposit upon sale of the containers and refund that deposit upon return of the containers.

Petitioners also argue that the Bowie ordinance violates the Commerce Clause because of the possibility that further and potentially conflicting laws could be passed by other municipalities, counties or states. This contention may be disposed of by noting that petitioners point to no existing law that would conflict with Ordinance 0-4-71. *See Huron Portland Cement Co. v. City of Detroit, Mich., supra,* 362 U. S. at 448, where the Court stated:

"And while the appellant argues that other local governments might impose differing requirements as to air pollution, it has pointed to none. The record contains nothing to suggest the existence of any such competing or conflicting local regulations. Cf. Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003. We conclude that no impermissible burden on commerce has been shown."

(5)

Next, the petitioners argue that Bowie did not possess the power to enact Ordinance 0-4-71. They point out that the Bowie charter itself did not contain an express authorization to enact a waste control ordinance. They rely upon the principle set forth in 1 Dillon, *Municipal Corporations* (5th ed.), § 237, that " 'a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation, — not simply convenient, but indispensable.' " This principle has repeatedly been applied by this Court. *See, e.g., New Carrollton v. Belsinger Signs*, 266 Md. 229, 237, 292 A. 2d 648 (1972); *McRobie v. Town of Westernport*, 260 Md. 464, 466, 272 A. 2d 655 (1971); *Rushe v. Hyattsville*, 116 Md. 122, 126, 81 A. 278 (1911).

While Bowie's charter may not have specifically authorized Ordinance 0-4-71, the ordinance was expressly authorized by the General Assembly. Maryland Code (1957, 1973 Repl. Vol., 1974 Cum. Supp.), Art. 23A, § 2(14), provides:

"In addition to, but not in substitution of, the powers which have been, or may hereafter be, granted to it, . . . [the legislative body of every incorporated municipality in this State] also shall have the following express ordinance-making powers:

* * *

"(14) *Garbage.* — To regulate or prevent the throwing or depositing of any dirt, garbage, trash, or liquids in any public place and to provide for the proper disposal of such material."

The enactment of the deposit ordinance is clearly within this express grant of power set forth in § 2 (14).

At the time of the enactment of Bowie Ordinance 0-4-71, Art. 23A, § 4, purported to make Art. 23A, § 2, inapplicable to municipalities in certain counties including Prince George's County. However, Art. XI-E, § 1, of the Constitution of Maryland provides that:

"[T]he General Assembly shall act in relation to the incorporation, organization, government, or affairs of any such municipal corporation only by general laws *which shall in their terms and in their effect apply alike to all municipal corporations* in one or more of the classes provided for in Section 2 of this Article." (Emphasis supplied.)

*See City of Gaithersburg v. Mont. Co.,* 271 Md. 505, 318 A. 2d 509 (1974). The General Assembly, apparently recognizing the unconstitutionality of § 4 of Art. 23A, repealed § 4 in 1973. Laws of 1973, Ch. 451.

(6)

Petitioners' last argument is that the General Assembly has preempted the field of alcoholic beverage regulation by enactment of Maryland Code (1957, 1968 Repl. Vol.), Art. 2B, and by specifically providing for the issuance of regulations concerning alcoholic beverage containers in §§ 185 and 186 of Art. 2B.[6] Thus, petitioners argue, Bowie had no authority

---

6. Sec. 185 states, in part:

"The Comptroller is hereby directed and empowered to make, amend, alter and publish rules and regulations for the proper enforcement of his duties under this article. He is authorized to

to enact Ordinance 0-4-71. Petitioners' contention that the General Assembly has totally occupied the field of alcoholic beverage regulation is inapplicable to this case. Here, the Bowie ordinance is a waste control and environmental protection measure. Bowie has not attempted to regulate alcoholic beverages, and the effect of Ordinance 0-4-71 is not to produce any interference with the State's regulation of alcoholic beverages.

Furthermore, there is no conflict between Ordinance 0-4-71 and §§ 185 and 186 of Art. 2B. Sec. 185 relates only to the "nature, form and capacity" of alcoholic beverage containers. Ordinance 0-4-71 has nothing to say on that subject. Sec. 186 authorizes the Comptroller to make regulations with regard to deposits on returnable beer containers, but as petitioners concede, the Comptroller has taken no action in that area. Moreover, § 186 is limited to deposits on returnable beer containers "charged and collected by *manufacturers and wholesalers* of beer" (emphasis supplied). The scope of the Bowie ordinance is limited to the sale of malt beverages and soft drinks "at the retail level." Thus, neither § 185 nor § 186 of Art. 2B supports petitioners' claim of preemption, since neither applies to deposit requirements on malt beverage containers at the retail level.

> *Order affirmed.*
> *Petitioners to pay costs.*

*O'Donnell, J., dissenting:*

I must dissent from the views expressed by my learned brethren, principally because, as I see it, Ordinance 0-4-71

---

adopt rules and regulations in regard to ... nature, form and capacity of all containers ...."

Sec. 186 provides:

"The Comptroller is hereby authorized and empowered to make, amend, alter and publish rules and regulations regarding the amount of deposit on returnable beer containers which shall be charged and collected by manufacturers and wholesalers of beer."

(Charter and Code of City of Bowie, § 16-17.1) violates the rights guaranteed the appellants by the due process clause of the Fourteenth Amendment to the United States Constitution and Article 23 of the Maryland Declaration of Rights.[1]

In reviewing the ordinance we must, upon the totality of the factual evidence presented, determine whether the means selected by the ordinance — by requiring a deposit of at least five cents on each beverage container — bear a real and substantial relationship to the object sought to be attained by the ordinance — the control of litter within the City of Bowie, or whether the ordinance itself is unreasonable, arbitrary or unreasonably oppressive.

In *Maryland Bd. of Pharmacy v. Sav-A-Lot,* 270 Md. 103, 311 A. 2d 242 (1973), following a trial on the merits, this Court held, notwithstanding the presumption of its constitutionality, that Maryland Code (1957, 1971 Repl. Vol.) Art. 43, § 266A (c) (4) (iv), prohibiting advertising of prescription drug prices, or terms connoting discounts on such drugs, was, upon the evidence presented, unconstitutional as a violation of the due process clause and of Article 23 of the Maryland Declaration of Rights in that the statute, purporting to have been enacted to protect the public health and welfare, bore no real or substantial relationship in attaining that result.

Judge Levine, who delivered the opinion for the Court, after noting "that whatever may be the current direction taken by the Supreme Court in the area of economic regulation, as distinguished from the protection of fundamental rights," and that Maryland has adhered to the "traditional test" formulated by the Supreme Court and enunciated in *Lawton v. Steele,* 152 U. S. 133, 137 (1894), and followed in *Goldblatt v. Hempstead,* 369 U. S. 590, 594-95 (1962), stated:

---

1. The "law of the land" as used in Article 23 of the Maryland Declaration of Rights has been held to be synonymous with "due process of law" as used in the United States Constitution. *See* County Comm'rs v. English, 182 Md. 514, 35 A. 2d 135 (1943).

"[T]he arguments advanced by the Board demonstrate no 'real and substantial relation to the object sought to be attained,' by the 'means selected.' Quite to the contrary, the evidence indicates that continued existence of the statute is inversely related to the public health and welfare. Consequently, we do not hesitate to label it 'unreasonable, arbitrary and capricious,' and therefore an unconstitutional exercise of the police power. Although the objectives attributed to the statute are, indeed, commendable ones, there is no 'substantial relation' between them and the statute. The result is, and we so hold, that subsection (iv) of § 266A (c) (4) violates the Due Process Clause of the Fourteenth Amendment and Art. 23 of the Maryland Declaration of Rights." 270 Md. at 121, 311 A. 2d at 252.

Similarly, in *Maryland State Bd. of Barber Examiners v. Kuhn,* 270 Md. 496, 312 A. 2d 216 (1973), again following an evidentiary hearing, this Court declared Code (1957, 1971 Repl. Vol. [1973 Cum. Supp.]) Art. 43, § 529 (a), which restricted licensed cosmetologists to cutting only the hair of females — purportedly enacted as a lawful exercise of the "police power" — was violative of both the equal protection and due process clauses of the Fourteenth Amendment since, again, it was found, upon the evidence presented, to bear no real and substantial relationship to the public health, morals, safety and welfare of the citizenry.

Judge Levine, who again delivered the opinion for the Court, in pointing out the test to be applied, stated:

"In cases brought under the Equal Protection Clause of the Fourteenth Amendment, but not involving so-called 'suspect classifications' or 'fundamental personal rights,' the Supreme Court and this Court have applied the more traditional 'rational relationship' or 'fair and substantial relation' tests, which require, at a minimum, that a statutory classification bear some 'rational

relationship' to a legitimate state purpose, *Weber v. Aetna Casualty & Surety Co., supra; Morey v. Doud,* 354 U. S. 457, 463-64, 77 S. Ct. 1344, 1 L.Ed.2d 1485 (1957); *Dasch v. Jackson,* 170 Md. 251, 265, 183 A. 534 (1936); *see Hearst Corp. v. St. Dep't. of A. & T.,* 269 Md. 625, 644, 308 A. 2d 679 (1973) (dictum); *cf. City of Balto. v. Charles Ctr. Parking,* 259 Md. 595, 598, 271 A. 2d 144 (1970); or that the legislative classification rest upon some ground of difference having a fair and substantial relation to the object of the legislation, *Reed v. Reed,* 404 U. S. 71, 92 S. Ct. 251, 30 L.Ed.2d 225 (1971); *Schilb v. Kuebel, supra; McDonald v. Board of Election,* 394 U. S. 802, 89 S. Ct. 1404, 22 L.Ed.2d 739 (1969); *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961); *Adm'r, Motor Veh. Adm. v. Vogt,* 267 Md. 660, 677, 299 A. 2d 1 (1973)." 270 Md. at 507, 312 A. 2d at 222.

In concluding that the section of the statute could not withstand constitutional scrutiny and hence violated the due process clause of the Fourteenth Amendment and Article 23 of the Maryland Declaration of Rights, he stated further:

"[I]f a statute purporting to have been enacted to protect public health, morals, safety and welfare has no real or substantial relation to those objects or is a palpable invasion of rights secured by fundamental law, it is our duty to so adjudge and thereby give effect to the Constitution, *Mugler v. Kansas,* 123 U. S. 623, 661, 8 S. Ct. 273, 31 L. Ed. 205 (1887); *Maryland Board of Pharmacy v. Sav-A-Lot, Inc. et al, supra; Hiller v. State,* 124 Md. 385, 391, 92 A. 842 (1914); *State v. Hyman,* 98 Md. 596, 615, 57 A. 6 (1904)." 270 Md. at 511, 312 A. 2d at 225.

In *Salisbury Beauty Schools v. State Board,* 268 Md. 32, 300 A. 2d 367 (1973), in sustaining a summary judgment under the Uniform Declaratory Judgments Act (Code (1957,

1971 Repl. Vol.) Art. 31A), we held valid *on its face,* as within the lawful exercise of the police power, the provisions of Code (1957, 1971 Repl. Vol.) Art. 43, § 537 (a), which prohibited any school of beauty culture from charging any money whatsoever for [beauty] treatment by its students. Although we did therein preface our holdings by stating that "such a statute will not be held void if there are any considerations relating to the public welfare by which it can be supported," citing *Davis v. State,* 183 Md. 385, 37 A. 2d 880 (1944) and *State v. J. M. Seney Co.,* 134 Md. 437, 107 A. 189 (1919), in both of the cited cases, as well as in *Salisbury Beauty Schools,* the constitutionality, *vel non,* of the statute was before this Court on other than facts elicited during an evidentiary hearing. Notwithstanding such a premise, we there held, as pointed out in *Sav-A-Lot, supra,* that the "means selected must have a real and substantial relation to the object sought to be attained." *See also Blum v. Engelman,* 190 Md. 109, 115, 57 A. 2d 421, 423 (1948).

Although Article 23 of the Maryland Declaration of Rights has long "been equated" with the "due process" clause of the Fourteenth Amendment, by judicial construction and application the two provisions are not synonymous. Whereas the decisions of the Supreme Court appear to uphold the validity of a regulation as within the exercise of the "police power" if its enactment is based on *any* reasonable consideration affecting the public welfare, *see Nebbia v. New York,* 291 U. S. 502, 538-39 (1934); *Williamson v. Lee Optical Co.,* 348 U. S. 483, 488 (1955), as pointed out in *Sav-A-Lot, supra,* in *Kuhn, supra,* and in *Salisbury Beauty Schools, supra,* our decisions have adhered to the test requiring that a "real and substantial relationship" to the object sought to be attained by the regulation be shown. The federal-state dichotomy was clearly pointed out in *Sav-A-Lot, supra.*

In premising their conclusion that the ordinance does not violate Article 23 of the Maryland Declaration of Rights upon the tenet that a statute "will not be held void if there are any considerations relating to the public welfare by which it can be supported," the majority, in conspicuously

omitting from the criterion the requirement that "the means selected must have a real and substantial relation to the object sought to be attained," have departed from the "traditional test" which our cases have adopted. The test applied by the majority — based upon an existence of "any considerations" — is contrary to the holdings of the United States Supreme Court in *Lawton v. Steele, supra,* promulgating the test which our cases have consistently embraced and where it was stated:

> "To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, *require such interference*; and, second, that the *means are reasonably necessary for the accomplishment of the purpose,* and *not unduly oppressive upon individuals.* The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, *or impose unusual and unnecessary restrictions upon lawful occupations.* In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts. . . ." (Emphasis supplied.) 152 U. S. at 137.

*See also Goldblatt v. Hempstead, supra,* restating the standard of "reasonableness" but finding upon the record that the appellants had not sustained the burden of proof in showing that the ordinance enacted was so onerous or unreasonable as to violate their "due process" rights, and where the Court stated:

> "The ordinance in question was passed as a safety measure, and the town is attempting to uphold it on that basis. To evaluate its reasonableness we therefore need to know such things as the nature of the menace against which it will protect, the *availability and effectiveness of other less drastic protective steps,* and *the loss*

*which appellants will suffer from the imposition* of
the ordinance.

A careful examination of the record reveals a
dearth of relevant evidence on these points. . . ."
(Emphasis supplied.) 369 U. S. at 595.

As the principal evidence offered on behalf of the City of
Bowie of "any consideration relating to the public welfare,"
was the testimony of a member of two community
improvement associations (who later became a member of
the very Council which had enacted the ordinance), who,
from the same report which had been submitted to the
Council, described two projects for the pick-up of litter,
conducted by volunteers, in April and in October, 1970, along
two of the community's major traffic arteries, Maryland
Routes 197 and 450, which are heavily traveled and used as
ingress and egress to the Bowie Race Course when it is
conducting its meets. Following the spring meet
approximately 6,000 cans and 600 bottles were collected in
the April pick-up; 4,000 cans and 255 bottles were collected
in October. No distinction was made in tabulating the
results of the pick-up between those bottles or cans collected
and those to be regulated by the ordinance, although the
witness indicated that many of the cans and bottles were of
the same type as those scheduled for regulation. In the
October pick-up 12% of the bottles were "returnable" soft
drink containers; the remainder were "nonreturnable." This
testimony did not establish that these two projects had been
restricted to the municipal limits.

The only other evidence supportive of "any consideration"
was the testimony of a resident of Oregon, where a similar
state-wide statute is in effect, who opined that he "believed"
that litter had been reduced in that state as a result of its
mandatory deposit statute.

In contrast to this meager evidence as a predicate for
justifying the exercise of the "police power" the evidence was
massive on behalf of the 16 retailers located within the
limits of Bowie that the ordinance would have adverse and
dire economic consequences and that the effectiveness of the

ordinance would not bring about any meaningful reduction in litter — and thus not achieve the purpose for which it had been enacted.

The appellants' evidence established that the retail marketing area patronized by the residents of Bowie, a city of approximately 35,000 residents, was not limited by the artificiality of the municipal limits; that there were approximately 18 direct competitors outside those limits, some within sight of its border — all within one and one-half miles of the stores within the municipality; that Bowie residents have easy access to the stores unaffected by the ordinance; to those who already purchase from retailers outside the city will be added local patrons when the retailers within Bowie must remove preferred products from their shelves or, alternatively, be required to increase the retail selling price.

Those appellants operating small liquor or convenience stores have limited space for inventory and storage and rely upon large volume and high turnover sales; the storage and inventory systems currently used upon their premises for nonreturnable bottles and cans would prove physically inadequate for the storage and inventory of beer and soft drinks in returnable containers. Evidence established that imported and premium beers were unavailable in returnable containers, and soft drinks so available were extremely limited. It was pointed out, upon market analyses, that historically consumer preferences by choice have foreclosed the sale of returnable containers and that only a limited number of products are so sold. On three occasions one of the liquor stores undertook to advertise and to sell beverages in returnable containers within two percent of its cost, but failed to gain either additional customers or any new business for such products.

Almost without exception beer products sold by the retailers within the city are bottled by brewers located outside the State of Maryland; all premium beers, the majority of the beer market, were bottled out of the state and are supplied the retailers within the city by regional

distributors. A Prince George's County distributor for Budweiser products testified that only 5.6% of that company's malt products are sold in returnable containers and this percentage had been steadily eroded over the years due to customer preference for the convenience of nonreturnable containers, which preference has become increasingly evident as the beer market has shifted to off-premises and at-home consumption.

The Bowie retailers selling soft drinks receive their products from bottlers located both within and without the state. Purchasing patterns had similarly forced bottlers to reduce their use of returnable containers; each of the bottlers who testified gave firm statistical evidence concerning the impact of increasing consumer reluctance to purchase returnable containers and showed a progressive "drop-off" statistically in the number of times a returnable bottle is refilled and redistributed. The bottlers now packaging products in nonreturnable containers demonstrated the competitive disadvantage to them as a result of the ordinance and testified that on an economic basis the packaging of their products in returnable containers could not be justified to meet a market solely for the City of Bowie. Evidence was additionally supplied through such bottlers that the restriction in the city to returnable containers would require the employment of new vehicles and additional personnel whose sole responsibility would be the servicing of Bowie retailers with such returnable containers.

Vivid testimony was given by the retailers themselves concerning the economic impracticability of using containers requiring a deposit; that unless the containers sold by them were marked or identified by some certain indicia as having been sold by a particular retailer, he would become subject to "taking in" and paying five cents for returned containers which he had not in fact sold — and which might have been collected from anywhere outside the limits of Bowie; there was evidence of additional expenses imposed upon the retailers for added labor in identifying containers sold by them, in processing the return of "empties" (bottles) and

storage, the employment of additional dumpsters in which to collect the increased used cans and the cost of additional trash pick-up service. The "passing on" of these overhead costs to the retail customer would increase the competitive disadvantage of Bowie retailers to those outside its limits. It was shown that if the retailer sought to protect himself by returning the bottles to the bottler for reimbursement of the deposit or for the disposal of such containers an increase of twenty-four to thirty cents per case would be necessary in the sale of beer and price-conscious customers would patently prefer to purchase their beverage outside the municipal limits in nonreturnable containers rather than be required to pay the increased retail price on the returnable containers — plus the statutorily mandated deposit.

The manager of the Bowie Inn, recognizing the easy access of customers to stores without the city and the purchasing patterns followed by them, was of the opinion that he would be "put out of business."

A marketing expert, testifying on behalf of the appellants, was of the opinion, based upon market data, that approximately two-thirds of the present sales of beer were made in cans, that beginning in the late 1950s, from "marketing experience," consumers had demonstrated an overwhelming preference for non-deposit containers and recognizing the competitive shopping area, separated only by the geographical borders of the municipality, estimated that the overall decline in the sales of beer, within Bowie, might exceed 50%.

A number of witnesses from the State of Vermont, where a state-wide statute prohibits the "sale of beer or ale in nonreturnable glass containers," and whose premises were located near the border of Vermont with the neighboring states of New Hampshire and New York, gave graphic evidence concerning their loss of business — in some instances as high as 75%, during the first two months of 1974, by comparison with those same months in 1973, following the enactment of the Vermont state-wide statute.

The only expert witness on "litter control," testifying on

behalf of the appellants, conducted an item by item survey in representative areas of the municipality, including shopping centers, highways and residential areas and found, by actual count, that discarded beverage containers represented only 16% of the total litter found in the City of Bowie. Stating that litter was not caused only by Bowie residents, but by nonresidents who purchased beverages elsewhere — as well as those going to and departing from the Bowie Race Course — he observed that the enactment of the ordinance would have little if any effect on that "container litter" and that 84% of what he found (non-container litter) would still remain in the city. He opined that consumers would continue to purchase beverages outside the city, at stores on its periphery, and would consume and continue to discard those items within the city. From his experience he found that while a consumer may return a bottle where there is an immediate opportunity to do so, when such opportunity is not presented many consumers will not trouble themselves to retain a used container and further burden themselves by transporting it to collect the deposit.

In describing alternate methods by which the City of Bowie might substantially reduce its litter the witness proposed the proper placement of litter receptacles in areas peculiarly subjected to litter, such as shopping centers and parking areas, the enforcement of state laws against the discarding of litter from motor vehicles,[2] a realistic

---

**2.** Maryland Code (1957, 1971 Repl. Vol. [1973 Cum. Supp.]) Art. 27, § 468, known as the "Litter Control Law," makes it a misdemeanor, punishable by fine or imprisonment or both, "to dump, deposit, throw or leave" any litter on any public or private property of the state or any waters of the state and includes within its definition of "litter" "discarded materials of every kind and description." Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-1111, makes it a misdemeanor to "throw, dump or deposit any trash, junk or other refuse upon any highway."

Section 64-3 of the Prince George's County Code of Public Local Laws (Vol. II, Codes of Prince George's County, Maryland (1968)) makes it unlawful "to throw, dump or deposit any trash, junk or other refuse upon the land or property of another" or upon any public highway of Prince George's County. This ordinance is punishable by a fine of up to $1,000 or imprisonment up to 90 days, or both. The City of Bowie itself, in § 15-6 of Code of the City of Bowie, Maryland (1969), makes it unlawful for any person "to throw, dump or deposit any trash, junk or other refuse" upon the land or property of another or upon any public street of the city.

enforcement of the city's otherwise current anti-litter ordinance, the enactment of a "covered truck" ordinance, a mandate for proper refuse storage at loading and unloading platforms and the initiation of regular civic "clean-up" campaigns.

Upon such a record of evidence we are not asked to overrule a determination of fact based upon the credibility of the witnesses, the weight to be given their testimony, or their demeanor since the trial judge did find as facts that the ordinance "will have the effect of causing a loss of business to city retailers," that "the customers of the city retailers will go elsewhere to purchase their beverages in order to avoid the five-cent deposit," that "in order to comply with the ordinance they [the retailers] will have to bear the expense of handling the returned containers, the expense of storing them and the expense of disposing of them" and that this "will increase the cost of doing business by the retailers." He also found as a fact that "customers will avoid local retailers charging a five-cent deposit" and that "some of the customers in Bowie will favor non-Bowie retailers which are not burdened by the ordinance." Although the trial court concluded that the extent of the economic loss to be sustained by the retailers was "quite speculative" because of a lack of actual experience, he found that the burden imposed by the ordinance — notwithstanding the appellants' evidence — was not "*so* substantial that the court could conclude that it was *unduly* oppressive or unreasonably restrictive."

This conclusion appears to be "almost demonstrably wrong from the record," as we noted in *Grant v. City of Baltimore,* 212 Md. 301, 316, 129 A. 2d 363, 370 (1957), cited in *Eutaw Enterprises v. Baltimore City,* 241 Md. 686, 694, 217 A. 2d 348, 353 (1966).

The trial court in sustaining the validity of the ordinance — as has the majority here — predicated its conclusion on the premise that "such a statute will not be held void if there are any considerations relating to the public welfare by which it can be supported." Although it found, as does the majority, that the effect of the ordinance in bringing about

the results to be attained were indeed "speculative," it concluded that "this fell within the province of the effectiveness or the desirability of the legislation, not its logical relation to the problem." Such criterion, I feel, is erroneous.

Although the majority finds that "there is a clear relation between the mandatory deposit requirement and the object of reducing litter in Bowie," it fails to make a finding, under the test which this Court had adopted, that the means employed by the ordinance "bears a real and substantial relation to the ends" sought to be attained. Nor can I agree — in view of the overwhelming evidence by the appellants, and the findings of fact by the trial judge — that the constitutionality of the ordinance should await an "extensive trial" and "opportunity to discover whether the ordinance will be good, bad or indifferent in its results."

I do not find the holdings in *American Can Co. v. Oregon Liquor Control Comm'n,* 15 Ore. App. 618, 517 P. 2d 691 (1973), *review denied,* 15 Ore. App. 618, 517 P. 2d 691 (1973), or *Anchor Hocking Glass Corp. v. Barber,* 118 Vt. 206, 105 A. 2d 271 (1954), here controlling. In *American Can Company* the Court of Appeals of Oregon upheld a statute requiring all retailers and distributors (including manufacturers) to return a deposit on any container sold by him. The statute further outlawed the sale of "pull top" cans. The statute there in question had state-wide application, applied to all types of beer and carbonated beverage containers and required distributors to reimburse retailers for the return of any container used in the sale of their beverage. The Oregon court held that their state constitutional provision — unlike Article 23 of the Maryland Declaration of Rights — could not be considered the equivalent of the "due process" clause of the Fourteenth Amendment and was designed solely to provide compensation by way of money damages where the government took property for governmental use. That court applied the more liberal test applied by the Supreme Court and not the "relationship test" embedded in our decisions.

The Supreme Court of Vermont, in *Anchor Hocking Glass Corp.,* in upholding the constitutionality of a state-wide

statute prohibiting the "sale of beer or ale in nonreturnable glass containers" did so, not upon evidence such as that here presented by the appellants, but solely upon the pleadings in the case and, avoiding the "due process" issue, predicated their findings upon the Twenty-First Amendment to the United States Constitution and the "equal protection" clause of the Fourteenth Amendment.

Of much more persuasion — upon facts virtually identical to those submitted here — are the holdings in *Kokales v. City of Ann Arbor* [No. 7758, Circuit Court for Washtenaw County, decided April 10, 1974],[3] where the City of Ann Arbor enacted a similar mandatory deposit ordinance at the retail level and attempted to support its constitutionality by claiming that it would bring about a reduction of litter.

The Michigan Court, upon strikingly similar evidence, applied the test which our Court has adopted and noted that "even if the stated objectives of an ordinance are proper and constitutional, an ordinance may be declared invalid if it does not reasonably accomplish its objectives." That court, upon its examination of the evidence submitted, finding that there was "no basis for concluding that the refund deposits would have any effect upon the litter problem in Ann Arbor," and that the ordinance "does not bear a reasonable relation between the remedy adopted and the public purpose," struck the ordinance down. In doing so the court found that "[I]f the ordinance were enforced the costs to the plaintiffs would be constitutionally prohibitive as compared to the miniscule benefits to the City of Ann Arbor" and that to require a deposit on a container that could not be refilled and reused was clearly a deprivation of property and did nothing to relieve the litter problem. That court was of the view that if a similar statute were passed on a state-wide basis in Michigan it might withstand the test of constitutionality, but as an ordinance deprived the plaintiffs of "due process of law."

---

**3.** Reproduced in the appellants' record extract and from which no appeal was entered according to the advice received by us from the Clerk of that Court.

Although the efforts of the City of Bowie to alleviate its litter problem are indeed most laudable, it is my view that unlike the result reached in *Goldblatt v. Hempstead, supra,* the appellants here have sustained the burden of proof in showing that the means employed by the use of the ordinance do not bear a real and substantial relation to the end the City sought to attain, and under the holdings in *Lawton v. Steele, supra,* as applied in this state, the ordinance is in violation of the "due process" rights guaranteed the appellants under Article 23 of the Maryland Declaration of Rights — and to the extent that it is "equivalent" — with the rights guaranteed them under the Fourteenth Amendment.